# SPRING SPECIAL TERM.

## CHARLESTON.

ARMSTRONG v. TAYLOR COUNTY COURT.

Submitted January 28, 1896—Decided March 18, 1896.

1. CONSTITUTIONAL LAW—TAX LEVY—ILLEGAL INDEBTEDNESS.

   To enjoin a county levy on the claim that it goes to pay indebtedness incurred in violation of section 8, Art. X, of the Constitution, it must affirmatively appear that such indebtedness is in violation of the Constitution. He who asserts it must show it. It will not be presumed to be so.

2. CONSTITUTIONAL LAW—TAX LEVY—COUNTY ORDERS.

   The mere fact that a county levy is made to pay, among other demands, unpaid orders on the county treasury issued under orders made in former years, will not render the levy void, as against section 8, Art. X, of the Constitution. It must appear that such orders are for indebtedness prohibited by the Constitution.

3. INJUNCTION—COUNTY COURTS—TAX LEVY.

   An injunction will not be allowed, to restrain the execution of an order of a county court making numerous allowances to different county creditors, merely because some of these allowances are not proper charges on the county. An order laying a county levy will not be enjoined merely because of such illegal allowances. Payment of those allowances should be enjoined.

W. R. D. DENT for appellant, cited Const. Art. X, s. 8; 38 W. Va. 108; Code App. p. 1025, ss. 1, 2, 3, 4.

JOHN W. MASON for appellee, cited Code, c. 39, ss. 40, 41; Const. Art. X, s. 8;   Cooley, Tax. (Ed. 1876) 102; 7 W. Va. 501; 35 W. Va. 505; 38 W. Va. 104.

BRANNON, JUDGE:

The County Court of Taylor county, 2d July, 1895, allowed and ordered payment of various demands against it,

and at the same term, 8th July, made a levy to pay the same and estimated expenditures, whereupon Adolphus Armstrong, a taxpayer of the county, on behalf of himself and other taxpayers, obtained an injunction against the execution of both orders—that of 2d July, and the levy order of 8th July.

The county court demurred to the bill, and moved a dissolution of the injunction; but by decree of 30th September the injunction to the order of 8th July, laying the levy, was perpetuated, and the injunction to the order of 2d July, allowing the demands against the county court, and ordering their payment, was continued until a proper levy should be made, the court being of opinion that the said levy was in excess of the sum necessary to pay the demands against the county court. Thereupon, on 7th October, 1895, the county court, after making up and entering of record an estimate of the amount to be levied for, ordered another levy, and then filed an answer to the injunction bill, showing this new estimate and levy; and the court, by decree of 9th October, 1895, dissolved the injunction restraining payment of the allowances made by the county court's order of 2d July, 1895, thus allowing their payment. From both decrees, Armstrong has appealed.

What can he say against the first decree? It gave him a final injunction against the order laying the levy, and he can not complain of that, as he asked that. He complains that this decree did not give him a final injunction against payment of the various claims allowed by the order of 2d July, instead of letting the injunction stand until a proper levy should be made; but it seems improper to allow a sweeping injunction, forbidding payment of all of a large number of allowances to different persons, merely because some are invalid. Why not single out the invalid? I do not think a levy order itself could be wholly enjoined merely because it goes to pay some particular items not lawful charges on the county, because the objection runs only against those items, and their payment could be stopped without tying up the whole levy, and entailing distress on all the county's creditors. And he could not ask an injunction without making the creditor of the county—the

one having the real interest—a party. He says that some of these allowances belong to a prior year, but does not specify which ones, and we do not see that any do, if it would have any effect; and on the contrary, as the levy order levies for the payment of allowances made 2d July, "and any other claims heretofore allowed, for which orders are outstanding and unpaid," we think it plain that the allowances made on 2d July did not include re-allowances of any claims before allowed, but some unpaid county orders; and in fact the order of 2d July says they were claims arising since the last levy, and they would be lawful, and hence, if the provision for their payment would vitiate, it would vitiate the levy order, not the order allowing the claims made on a previous date. But I do not see that their presence would vitiate the levy. If I realize the argument of the appellant, it is that some, at least, of the amount levied was for debts incurred in the previous year (1894) and as the levy of that year must be taken to have been within lawful limit, and did not pay the allowances of that year, therefore we must infer that a debt unlawful was created without popular vote, from the fact that it was indebtedness incurred beyond the money on hand and the levy of the current fiscal year (1894) and thus in violation of section 8, Art. X, Const., as expounded in *Davis* v. *County Ct.*, 38 W. Va. 104 (18 S. E. 373). But, from the mere fact that we find a county court levying for county orders outstanding and unpaid, are we to say that they represent indebtedness incurred by the court in violation of the Constitution? Rather should we not presume that they represent indebtedness lawfully incurred? He who alleges their invalidity must show it, and it is not shown. And may there not be allowances for indebtedness lawfully incurred, and, by reason of a mistake in the estimate of the county court, or larger delinquency than expected, or bankruptcy of a sheriff, or other cause producing unexpected deficit, no money to pay some of the county orders? Surely they are not to remain forever unpaid. They are valid unpaid obligations of the county court, and it is not unlawful to meet them. Section 29, chapter 39, Code, in letter authorizes their payment. Clearly, the Constitution was never meant to be carried so far.

What can Armstrong say against the decree of 9th October? It simply dissolved the injunction prohibiting payment of the allowances made by the order of 2d July. I have shown that there was no valid reason for injunction against that order That was simply an order making allowances, not a levy. There is a difference. If there was, as the bill claimed, no estimate such as the law required as a prerequisite to a levy, that would affect the levy order of 8th of July, but not the allowance order of 2d July. None of the claims allowed were shown to be not lawful charges against the county, and I see no reason for continuing the restraint upon their payment until a lawful levy should be made, as they were general drafts on the treasury, payable on any funds in it, and need not wait for a levy; but that restraint prejudiced the creditors of the county, not Armstrong. And, more clearly still, when the county court made the detailed and minute estimate found in the record, and under it made the new levy, there was still less reason for continuing the injunction against the payment of those allowances, and it was properly dissolved.

The point is made against this decree that this second levy was made while the injunction was yet pending against payment of the claims allowed 2d July, and in contempt of it. Not at all. It was a levy order, not disobeying the injunction; and, besides, the very decree itself allowed a second levy, and only continued the injunction to the county court order of 2d July until a new levy should be made; and besides, further, section 31, chapter 39, Code, allows a second levy when a former one has been superseded by legal proceedings. It is a necessity. It was proper to make it known to the court by answer. Decrees affirmed.