# CHARLESTON

## State ex rel Trust Co. *v.* Melton.

### Submitted April 23, 1907.   Decided May 22, 1907.

1. Taxation—*Payment of Taxes—Tender of County Orders—Mandamus.*
    A sheriff or collector of state, county and district taxes, having in his hands money, belonging to the general county fund of his county, is bound to receive, from a tax-payer, in payment of all of his state, county and district taxes, county orders, drawn pursuant to law, if owned by such tax-payer and by him tendered for payment thereof, and *mandamus* lies to compel such acceptance of the same.   (p, 258.)

2. Same—*Refusal to Accept.*
    That the orders tendered were drawn in a fiscal year prior to that for which the taxes are due, and made payable out of the funds of such previous year, constitutes no ground for refusal to accept them in payment of the taxes.   (p. 259.)

3. Counties—*County Orders—Assignment.*
    County orders are assignable, subject to a right, in the sheriff or collector, to deduct any taxes due from the payee thereof. (p. 259.)

4. Same—*Payment.*
    Such orders are payable by the sheriff or treasurer on demand and in the order of their presentation for payment, when payment is insisted upon.   (p. 261.)

5. SAME—*County Levies—Disbursement.*

    The estimate made by a county court, in accordance with the requirements of section 29 of chapter 39 of the Code of 1899, section 1231, Code of 1906, does not constitute a rule for the guidance of the sheriff or treasurer in his disbursements of county levies. (p. 261.)

6. SAME—*Apportionment of Levy.*

    Such estimate does not effectuate appropriations of the levy based upon it, or an apportionment thereof, to or among the several purposes therein specified. (p. 260.)

7. SAME—*Payment of County Orders.*

    After having appropriated all the funds in the hands of the sheriff or treasurer by the drawing of orders thereon, the county court cannot vary the rule or order of payment of the orders, so as to favor the holders of certain orders to the detriment of the holders of others. Nor can it prevent the payment of outstanding orders, to the end that salaries and other necessary current charges against the treasury, not yet due, may have preference on becoming due and payable. (p. 262.)

8. MANDAMUS—*Refusal—Discretion of Court.*

    Discretionary power to refuse the writ of *mandamus* will not be exercised in a case in which the legal right is clear, substantial and fruitful in benefits, and the plaintiff has done nothing out of which an equitable estoppel or defense in the nature of one can arise. (p. 264.)

Error to Circuit Court, Kanawha County.

Applications by the state on the relation of the Kanawha Banking & Trust Company, for writ of *mandamus* to John J. Melton, sheriff, and others. From an order granting a writ, defendant brings error.

                   *Affirmed.*

LINN, BYRNE & LINN, S. B. AVIS and DANIEL DAWSON, for plaintiff in error.

PRICE, SMITH, SPILLMAN & CLAY, for defendants in error.

POFFENBARGER, JUDGE:

J. J. Melton, sheriff of Kanawha county, and the county court of Kanawha county have obtained writs of error to a judgment of the circuit court of said county, awarding, at the instance of the Kanawha Banking and Trust Company, a peremptory writ of *mandamus* requiring the said sheriff to

receive from the relator county orders of said county, amounting to about $2,500.00, in payment of its taxes, for state, county and district purposes, for the year 1906, about equal in the aggregate thereof to the amount of the orders tendered.

The return admits possession, by the sheriff, of money applicable to the payment of county orders, sufficient in amount to pay the orders in question, and the validity of the orders tendered in payment of taxes is not denied. Substantially, the defense is that these orders, though valid, are not payable out of the funds in the sheriff's hands, because these funds were derived from the levy for the year, 1906, all of which has been appropriated by the county court to the discharge of current expenses for said year, both by the estimate upon which the levy was predicated and the actual issuance of orders in said year to the extent of the entire amount of the levy, and the orders tendered in payment of taxes are, with a single exception orders drawn in previous years on the funds of previous years. It is further shown that they constitute a portion of a large accumulation of unpaid orders of prior years, amounting to $150,000.00 or $200,000.00, and it is urged that, if the sheriff is bound to pay such orders out of the levy for 1906, such payment may work postponement or deprivation of payment of the salaries of county officers and other expenses for services absolutely necessary and indispensable in character.

The determination of the rights of the parties involves the interpretation of the following statutory provisions:

"The county court of every county shall, at a regular session of said court, held not later than the month of July in each year, proceed to make up an estimate of the amount necessary to be levied for the current fiscal year to cover all county debts and liabilities payable during each year, including the probable expenditure for county purposes, the amount outstanding of unpaid orders on the county treasurer, and a proper allowance for delinquent taxes, discount allowed on taxes paid on or before the thirtieth day of November, expense of collection and contingencies; but deducting the money in the county treasury applicable to the service of the year, and county claims, the collection of which during the year may, in their opinion, be relied on; which

estimate shall set forth the several heads of expenditure with the amount estimated as necessary under each head, and when approved by the court shall with the order approving it be entered by the clerk in the proper record book. ˙ The said county court shall thereupon levy so many cents on every hundred dollars of the valuation of the property taxable in the county, according to the last assessment thereof, as will cover the estimated amount necessary to be raised for county purposes during the fiscal year: provided, first, that no county court shall in the year nineteen hundred and five assess or levy taxes, including district road taxes, which shall exceed by more than five per cent. the aggregate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and six assess or levy taxes which shall exceed by more than seven per cent. the aggregate amount of taxes levied by it in the year nineteen hundred and four; nor in the year nineteen hundred and seven assess or levy taxes which shall exceed by more than nine per cent, the aggregate amount of taxes levied by it in the year nineteen hundred and four. The word 'taxes' shall be construed to include district road taxes, as well as all other taxes for county purposes. If the county court of any county shall be of opinion that the maximum fixed by this proviso is insufficient for any of said years, it shall make up an itemized estimate of the expenses to be provided for in such year, with the rate of levy in cents on each one hundred dollars of valuation necessary to provide for the payment thereof, and may submit the question of an increased levy to the voters of the county at an election to be held therein on not less than thirty days· published notice, and may make such rules and regulations as may be necessary for the holding of such election; and if three-fifths of the votes cast on this question of increased levy at such election be in favor of such levy, the county court may levy the amount stated in the notice of election as necessary; but this proviso shall not extend to the counties of McDowell and Gilmer, but in such counties, for said years, the county court may levy taxes· under the limitations contained in section 7 of article X of the constitution of this state: provided, second, that after the year nineteen hundred and seven no county court shall in any year assess or levy taxes

for any and all purposes, including district road taxes, the aggregate of which shall exceed sixty cents on the hundred dollars valuation of property except for the support of free schools and the payment of indebtedness as provided in section 7 of article X of the constitution, unless such levy shall have been submitted to a vote of the people of the county and have received three-fifths of the votes cast for and against the same." Section 29, chapter 39, Code 1899, section 1231 Code 1906.

"All orders on the county treasury shall be in form or effect as follows:

"No.——$—— —— —— ——county——day——.

"The sheriff will pay to A. B., or order the sum of—— dollars and—— —cents allowed by special appropriation passed on the——day of——, 18—, after deducting therefrom the amount of all state, county and other taxes and levies in his hands for collection against the said A. B.

"E. F., Clerk.                    C. D., President.

"Or instead of the words 'allowed by special appropriation passed on the——day of——, 18—,' there may be inserted therein according to the fact, the words, 'for county bond due,' 'for interest due,' or 'for quarter's salary,' or other words specifying a lawful cause for such order; and no such order shall be rendered invalid by a defect of form." Section 37, chapter 39, Code 1899, section 1248 Code 1906.

"Every officer charged with the collection of taxes, county and district levies, militia fines and officers' fees, shall receive in payment therefor, at par, any county or school order or draft, drawn on him pursuant to law, which is then due and payable, if the person offering the same in payment be the person entitled thereto at the time it is so offered. And if the amount due on such order or draft be more than the amount to be collected from the person so offering the same in payment, the officer shall pay the balance due thereon, if he have in his hands any money applicable to such payment; and if not, he shall endorse thereon the amount of taxes, levies, fines or fees held by him against such person, and that he had no money in his hands ap--

plicable to the payment of the balance thereof.'' Section 16, chapter 41, Code 1899, section 1312, Code 1906.

''The lands, buildings, furniture and books belonging to a county and used for county purposes, shall not be subject to execution or other process, but when any demand against the said county has been disallowed, in whole or in part, or any order on the county treasurer, or judgment or decree for a sum of money against the said county court, has been presented to the sheriff without obtaining payment; or the sheriff has evaded or hindered such presentation, it shall be lawful for the person entitled to the money due on such demand, order, judgment, or decree, to petition any court having jurisdiction, or a judge thereof in vacation, for a writ of *mandamus*, to be directed to the county court of said county commanding it to provide for the payment of such money, by and out of the next county levy to be made in their county, or show sufficient cause why they should not be compelled to do so; which writ shall be returnable as the court or judge awarding the same may order. Upon the said writ such proceedings shall be had as are prescribed by law in other like cases, and the court (but not the judge in vacation) may, if the case justify it, award a peremptory *mandamus*, directed to such court to provide in the next county levy to be thereafter made, for what shall appear to be due to the said complainant, with interest and cost. To any judgment or order of a circuit court under this section a writ of error or *supersedeas*, may be granted on like principles and rules as in other cases.'' Section 43, chapter 39, Code 1899, section 1257, Code 1906.

That the proceeding is based on said section 16 of chapter 41, is so obvious that it is hardly necessary to say so; and read in connection with section 37 of chapter 39, it seems clearly to give, to an assignee of a county order, the right to set off the order against his taxes, state, county and district. The latter section, by its terms, clearly contemplates assignability of the order, and the former says the collector shall receive, in payment of such taxes, at par, any county or school order or draft, drawn on him pursuant to law, which is then due and payable, if the person offering the same in payment *be the person entitled thereto at the time it is so offered.*

As the respondent admitted funds in his hands applicable to the payment of county orders, it is not at all necessary or proper to consider the rights of the parties in a supposed case in which the funds applicable to the payment of the class of orders to which those offered belong, have been exhausted by actual payment of orders, or by reception thereof in payment of taxes.   Hence this opinion and decision cannot cover the wide range over which the argument has been extended.   The record affords no ground upon which the Court can stand and declare whether the legislature intended that the state or the sheriff shall carry the indebtedness of counties and districts.   We perceive no question for decision but this, whether the county funds in the hands of the sheriff are applicable to the payment of the particular orders tendered him.   If so, his reception of them will occasion him no personal liability or serious inconvenience nor the state any burden on account of local indebtedness, if under different circumstances it would do so.

This narrows the inquiry to an interpretation of section 29 of chapter 39 of the Code of 1899.   From said section and other statutory provision, the inference that the legislature never intended the estimate, required by said section, to work an appropiation of the funds named in it to the purposes therein mentioned, is plain.   Separate levies to raise the several sums set forth in the estimate are not required. The direction is to levy so many cents on every hundred dollars of the valuation as will cover the estimated amount to be raised for county purposes during the year.   It is to be raised and go into the hands of the sheriff as an undivided single sum for county purposes.   The sheriff's office and the clerk's office of the county court are separate and distinct offices, and the estimate is neither recorded in the office of the former nor certified to that office.   The clerk of the county court and the assessor in making out the land and personal property books, take no notice of it.   These books determine the amounts to be collected by the sheriff and designate the purposes for which they are raised, as state, state school, county, road and district purposes, and they fail to show any division or apportionment of the fund raised for county purposes.   Of course, he could see the estimate in the clerk's office and obtain a copy of it, if he desired to do so, but

there is significance in the failure of the legislature to re-
quire it, in any way, to be brought to his attention. A
matter of far greater potency, however, is his ina-
bility to enforce observance of such an apportionment. If
citation of any authority for so plain a proposition were
necessary, it would suffice to refer to *Taylor* v. *County
Court,* 50 S. E. 720, holding that a county court is not
bound to apply funds to the specific purposes for which they
were raised and that it may divert them to other purposes.
That the estimate is not an appropriation is indicated by
section 36 of said chapter, forbidding the drawing of orders
on the county treasurer, unless authorized by a special order
or appropriation of the county court, except in certain cases
in which, without special authorization, the president and
clerk of the court may draw such orders; for this implies
more than a mere auditing and approval of an account
against the treasury. It contemplates that and also a setting
apart, in the hands of the treasurer, of money to pay it, on
the legal assumption that provision has been made, or will
be made, for the payment of all orders so drawn. In recog-
nizing and according force to these inferences, the rule of
construction, requiring some effect to be given to every part
of a statute, if possible, is not violated. The provision, re-
quiring an estimate to be made and entered of record, per-
forms a highly important function, in that it constitutes a
rule or standard by which to determine what amount of
money shall be raised for county purposes, and tends to elim-
ination of the elements of conjecture and arbitrariness in the
laying of the levy. It demands the exercise of sound discre-
tion and, as a means to that end, requires the court to spread
upon its record the reason for its action in levying a certain
gross sum, in the form of a recital of the several purposes
for which it expects to use the money and the amount that
will probably be required for each purpose. It may have
been intended to perform the further function of preventing
the accumulation of a surplus in the treasury, and thereby
limiting the powers of the court in respect to the amount it
may raise. It is not at all necessary, in order to give it
effect, to say it amounts to an appropriation of money, or an
apportionment of the fund among the several purposes named
in the estimate; and, as so construed, the statute would work

great restraint upon the discretionary power vested in the court, the legislative intent that it should so operate ought to be plain.

This conclusion, about the correctness of which we have no doubt, makes it obvious that the failure to include, in the estimate, money for the payment of outstanding orders, and the specification of other purposes covering the entire amount raised, namely, the payment of salaries of officers, fees and mileage of jurors, court house and jail expenses, exonerations, delinquencies, commissions, county roads, poor charges, bridges and general purposes, did not limit the application of the money realized from the levy to the payment of orders issued for the effectuation of the purposes so named, nor preclude payment therefrom of any order lawfully drawn upon the treasury. As the court, in making appropriations of the fund, could disregard the estimate it had made, it obviously and necessarily follows that the sheriff, not only can ignore it, but is bound to govern himself by some other rule or guide in the disbursement of the funds in his hands. The estimate is not intended for that purpose, and, in view of its lack of power to govern the court in the disposition of the funds, it could not be observed or adhered to by the treasurer in honoring the warrants or orders drawn upon him.

This rule must be deduced from the language of the statutes prescribing the duties and powers of the court, and the sheriff, read in the light or known usage and general principles of law, relating to fiscal and commercial matters. The sheriff is bound to pay an order, on presentation thereof, if he has funds with which to do so. Failure to pay it, under such circumstances, renders him and his sureties, and the personal representatives of such of them as are dead, liable to the person entitled to receive the money due on it. Section 29, chapter 39, Code. This is a mandate of the law, unqualified by any other express provision, and it cannot be cut down by a mere fanciful implication, not founded upon conflicting statutory terms or provision equally positive. The law turns him adrift with no guide, other than this imperious command, and the implied caution that he must pay no orders not drawn pursuant to law. Bound to obey it, he must of necessity accept it as his rule of action.

The court is in session only a small portion of the time and is not at hand to supervise his conduct or give advice, if it had the power to do so, and this of itself clearly indicates lack of legislative intention that it should perform such functions. The statute makes each order payable on demand, on presentation. If not an assignment *pro tanto* of the funds in the hands of the treasurer, for the collection of which the assignee must exercise reasonable diligence, it sets apart a fund to which he must look for payment as long as it is available. He cannot recur to the court for satisfaction of his demand if there are funds in the treasurer's hands. Section 43 of chapter 39 does not authorize an application to the court by the holder of an order under such circumstances, and, when conditions warrant a *mandamus* against the court, at the instance of the holder of an order, the writ only compels that body to provide in the hands of the treasurer a sufficient sum to pay the order. It is not the actual custodian of the funds and disbursing officer. In making these obligations payable on demand, the legislature merely adopted a principle, founded on usage of immemorial origin and observance, which extensively pervades the whole system of commercial law. One inevitable result of its operation is the giving of preference in the order of presentation, if insisted upon, conformably to the legal maxim *Qui prior est tempore, potior est jure.* For a discussion of the principles and a citation of cases illustrating its application, see *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.*, 59 W. Va. 75. If the law is observed fully, no illegal orders issued and ample funds provided, this can never work a hardship or postponement of any person's right, and the legislature contemplated no violation of law or omission of duty. The entire system is projected on the assumption that every officer and tribunal will legally and fully perform his or its duty. If this has not been done in Kanawha county, it is not a matter of wonder or astonishment that embarrassing conditions have resulted, and the court cannot vary the law to meet conditions, created in violation or disregard thereof. Such action would unsettle the whole system of county fiscal law, as well as amount to the usurpation of legislative powers.

No doubt invalidity of the orders, if issued, contrary to

law, would have availed the sheriff as a defense, but he has not controverted their validity, and there is a presumption in favor of it. *Taylor* v. *County Court*, 50 S. E. 720. That they were drawn on the funds of previous years is not a defense of that kind. They may be perfectly good notwithstanding that. *Taylor* v. *County Court*. That no funds may remain for payment of the salaries of officers and the discharge of other current expenses is a matter for which he is in no sense responsible, and which lies entirely beyond the limits of his official province and powers. It is an embarrassment, relievable, if at all, by the county court or the legislature.

By its intervention in this action, the county court has endeavored to obtain a decision which will enable it to give preference to the orders drawn in the fiscal year 1906, over those drawn in previous years. We know of no principle under which it can exercise such power. Having made appropriations in the form of orders drawn on the sheriff, which that officer is bound by law to pay on presentation, the court endeavors now to vary the rule of payment, prescribed by the law, so as to relieve the holders of certain orders, to the prejudice of the holders of others. Like the sheriff, it bases its defense, not on illegality of any of the orders, or an intention to cancel or otherwise destroy any of them, on the ground of invalidity in any form, but on an alleged right to vary or control the order in which the holders are entitled to receive payment. We do not think the court possesses such power or authority. Its functions are separate and distinct from those of the treasurer, and, in the absence of special circumstances, cease with the issuance of the orders, until after payment by the sheriff, and, its functions, after payment, extend only to the ascertainment of the correctness and confirmation of the sheriff's account of receipts and disbursements. Section 34, chapter 39, Code 1899, section 1245, Code 1906. Its petition says, in substance that no money was raised by the levy of 1906, or could be raised by it, for the payment of orders issued in prior years, for the reason that the levy laid in that year, raised the largest amount the law allowed the court to raise, and the accomplishment of desirable and highly meritorious purposes, of a public nature, necessitated

the expenditure of all of it, leaving nothing for the payment
of old orders.     Much could be said for the wisdom of a
statute, giving such power and control, if we had one,
but nothing of weight or consistency for such a con-
struction of the statutes as they are.    In reaching such a con-
clusion, we would be compelled to give the statutes an
interpretation, directly contradictory of both their letter
and spirit.

As to the propriety of allowing the county court to de-
fend, it suffices to say that, as its petition showed no good
ground of defense, the court might well have refused leave
to file it.     But, in its final action on the merits of the case,
the same result was accomplished by sustaining the demurrer
to the answer and return of the county court.     We are not
prepared, nor is there occasion, to say the county court could
not, under any circumstances, defend in a proceeding of the
nature of this one.

Much has been said in the argument about the fate of the
orders, drawn in the year 1906, which may be displaced by
those drawn in prior years.     It may be that their status
will be less advantageous than that of the orders drawn be-
fore the passage of the Act of 1905, limiting the powers of
county courts, respecting the amounts of money they may
raise for county purposes, and even entirely remediless by
the process or action of any court, and that legislative action
may be the only means of relief.     In reference to these mat-
ters we decide nothing, except that the probability of com-
plications and embarrassment from the effect of the limita-
tion statute constitutes no defense to the writ.     That statute
operates on the court, not the sheriff, and fails to confer
upon the court any new power to make appropriations of its
funds, or vary the order of payment of warrants drawn on
the sheriff.

There may be discretion in the courts to refuse the writ of
*mandamus*, under peculiar circumstances, rendering it in-
efficacious beyond the vindication of a dry or fruitless legal
right, or where the conduct of the applicant, in the nature
of a waiver or estoppel, makes it inequitable or unjust, on
his part to exact strict and full compliance with the law; but
we perceive nothing in the circumstances of this case upon

which to base an equitable estoppel, or defense in the nature thereof. Any embarrassment or hardship that may ensue must be laid at the feet of the county court, the legislature, or some person, or body other than the applicant, and it cannot be denied that the relief asked is substantial and benficial as well as plainly authorized by the law.

For the reasons aforesaid, the judgment complained of will be affirmed.

*Affirmed.*