# CHARLESTON.

STATE *ex rel.* JARRETT *et al.* v. BANKS *et al.*

Submitted May 13, 1925.          Decided June 2, 1925.

ELECTIONS—*Where Large Numbers of Ballots of Certain Precincts Have Been Altered Since Count Had Closed, Vote Will be Ascertained on Recount by Canvassing Board From Certificates of Precinct Commissioners.*

> When, upon a recount by a Canvassing Board, it appears that large numbers of the ballots of certain precincts have been altered since the count at the polls, all the ballots from those precincts will be discarded and the vote thereof ascertained from the certificates made by the several precinct commissioners.
>
> (Elections, 20 C. J. §263 [1926 Anno.])
>
> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Suit by the State, on relation of D. M. Jarrett and others, for mandamus to be directed to B. D. Banks and others.

*Writ awarded.*

*Price, Smith & Spilman* and *D. C. Howard, Murphy & Bratton.* and *Beverly Broun,* for relators.

*Poffenbarger, Blue & Dayton,* and *Leftwich & Shaffer,* for respondents.

HATCHER, JUDGE:

At the general election held November 4th, 1924, in the county of Boone, the relators D. M. Jarrett, A. W. Garnett, Irving Sutphin, Bruce Allen and J. G. Eadleman were candidates on the Democratic ticket respectively, for the House of Delegates, Prosecuting Attorney, Sheriff, County Commissioner, and Assessor of said county. Their opponents on the Republican ticket for these offices were respectively, H. H. Andrew, L. P. Hager, D. W. Jarrell, C. O. Harless and Joe S. Hill.

There are 33 election precincts in the county. A canvass of the returns from all of these precincts showed the following majorities for the relators:

| | | |
|---|---|---|
| Jarrett | 85 | votes |
| Garnett | 53 | ,, |
| Sutphin | 17 | ,, |
| Allen | 59 | ,, |
| Eadleman | 158 | ,, |

A recount of the votes was demanded by the Republican candidates, which being had, resulted in the following majorities for the contestants:

| | | |
|---|---|---|
| Andrews | 27 | votes |
| Hager | 153 | ,, |
| Jarrell | 117 | ,, |
| Harless | 246 | ,, |
| Hill | 174 | ,, |

The recount showed very slight changes from the returns as canvassed in 29 out of the 33 precincts. In the other four precincts, to-wit: precinct No. 1 in Sherman district, precinct No. 4 in Peytona district and precincts Nos. 1 and

3 in Washington district, the following gains were made by the contestants on the recount:

| | |
|---|---|
| Andrews | 109 votes |
| Hager | 211 ,, |
| Jarrell | 210 ,, |
| Harless | 296 ,, |
| Hill | 320 ,, |

The entire number of ballots cast in the four precincts was about 675. At the recount, the relators offered evidence that the ballots from these precincts had been handled in such a way as to lose their integrity. After admitting evidence as to the preservation of the ballots from precinct No. 1 of Sherman district, the Canvassing Board refused to continue the hearing further, and ruled that the ballots from the four precincts had not lost their integrity. The relators then brought their case to this court by a proceeding in mandamus, wherein we held:

"That the Board of Canvassers erred in holding that the ballots were the best evidence of the result of the election held in Sherman No. 1 precinct, and in refusing to hear evidence as to the integrity of the ballots from Peytona No. 4, and Washington Nos. 1 and 3 precincts."

A writ was awarded, giving the relators the relief above indicated. See *Jarrett et al* v. *Board of Canvassers*, decided December 22nd, 1924.

In compliance with the writ, the Board of Canvassers reconvened and heard evidence as to the ballots from precinct No. 4 of Peytona district, and precincts Nos. 1 and 3 of Washington district. Upon the conclusion of the hearing, the board, by a majority of two to one, held that the ballots from these three precincts had not lost their value as primary evidence. These ballots were accordingly then included in the recount, which resulted in the election of the contestants by the following majorities:

| | |
|---|---|
| Andrews | 5 votes |
| Hager | 111 ,, |

Jarrell              126  ''
Harless              162  "
Hill                  76  ''

Certificates of election for the several officers were there-
upon issued to the contestants.  The relators now seek in this
court a mandamus requiring the Board of Canvassers to

> "disregard as evidence the ballots cast in Pey-
> tona precinct No. 4 and Washington precincts Nos.
> 1 and 3 of said election, and disregard the results
> found by a recount of the same, and in their place
> and stead accept the returns as certified by the com-
> missioners of election from all the various precincts
> of Boone County as primary evidence of the result
> of the election held on November 4, 1924."

A vast amount of evidence was taken on this recount.  All
of the election officers at precincts No. 4 of Peytona district
and No. 1 and 3 of Washington district testified that no evi-
dence of fraud was observed at the election; that there were
very few mixed ballots cast at the several precincts; that the
ballots were carefully and correctly counted and recorded,
and then sealed and forwarded to the clerk of the County
Court in manner provided by law.  A majority of the elec-
tion officers at each of the three precincts was Republican.
There is little or no conflict of testimony in the evidence
of the respective election officials at the several precincts.
The evidence of the clerk of the Boone County Court and his
assistants, as well as the evidence of the members of the Can-
vassing Board, other county officials and a large number of
citizens was taken as to the manner in which the ballots were
preserved after reaching the custody of the clerk.  There
is considerable divergence of statement among the witnesses
who testified thereon.  The evidence of those who are mem-
bers of the Republican party indicates that the ballots were
carefully preserved with no opportunity for tampering.
The evidence of witnesses who belong to the Democratic party
tends to show that the ballots were kept in such a careless
and indifferent manner as to afford opportunity for fraud.

The total number of votes cast at the three precincts was
about 442.  A certificate of the vote therein giving both the

returns of the election officers and the recount by the Canvassing Board shows a change in the vote of the three precincts on the recount in favor of the Republican contestants as follows:

| For | Delegate | 90 | votes |
|-----|----------|-----|-------|
| '' | Prosecuting Attorney | 164 | '' |
| '' | Sheriff | 153 | '' |
| '' | Commissioner | 221 | '' |
| '' | Assessor | 237 | '' |

The ballots in these precincts were counted within a few hours after they were cast by the voters, and before any opportunity for tampering has been shown. When counted at the precincts, it was not known that the alteration of a few votes would change the result of the election as to the litigants in this case. The precinct counts were made by boards composed of friends of each of the competing candidates, watchful for fraud or mistake.

Neither the accuracy of the count made by the election officers nor the correctness of the count made by the Canvassing Board is discredited. Such a large difference in the two counts of these precincts is enough of itself to arouse the gravest suspicion of fraud. If the count made by the election officers was a correct count of the ballots at the time it was made, and the count made some time later by the Canvassing Board was also then correct, it necessarily follows that the ballots were in some way altered between the times of these two counts. This conclusion is confirmed by an examination of the ballots in question made by the members of this court. We have precedent therefor in *McKinzie* v. *Hatfield,* 77 W. Va. 508. Our inspection was aided by a magnifying glass, with which it was clearly apparent that in the case of many of the mixed ballots from each of the three precincts, the hand and the pencil which placed the cross-marks opposite the Republican respondents herein was different from the hands and the pencils that placed the cross-marks at the head of the ballots for the Democratic ticket. It was also apparent that the hand and the pencil in such cases which marked the votes for the Republican respondents in

one of the precincts *was the same hand and pencil which marked similar votes in the other two precincts.*

Counsel for the respondents virtually admit fraud, but challenge proof as to where and when the fraud was committed. The evidence does not disclose the time or the place, but we are forced to conclude that it occurred subsequent to the count by the election officers. In order for this same hand and pencil to have accomplished what it did, it was necessary that the ballots should be away from the watchful observation of the election officers. Their observation continued until after the ballots were counted and sealed. For us to hold that it occurred prior to the count at the polls, we would have to believe not only that the election officials at each precinct were either corrupt or stupid, or both, but that this same hand and pencil was operating *simultaneously* at each of these three separate places while the voting was in progress. Such a conclusion would be absurd.

We deem it unnecessary to discuss the conflicting evidence as to the care and custody of the ballots and the opportunity of access thereto. No matter how close the custody or how great the care, their present appearance is proof that the despoiler found the opportunity.

Under *Stafford* v. *Sheppard,* 57 W. Va. 84, *McKinzie* v. *Hatfield, supra,* and other cases decided by this court, when it appears that the ballots have been tampered with, they must be rejected on a recount and the certificates made by the election officers taken as the best evidence of the result of the vote. McCrary on Elections, par. 474 and 475.

The writ will be awarded as prayed for, as to the returns from Peytona precinct No 4 and Washington precincts Nos. 1 and 3.

*Writ awarded.*