C. B. LUCAS *et al.* v. BOARD OF CANVASSERS OF LINCOLN COUNTY

(No. 8125)

*and*

W. B. LINKOUS *et al.* v. BOARD OF CANVASSERS OF LINCOLN COUNTY

(No. 8163)

Submitted July 22, 1935. Decided July 26, 1935.

No. 8125:

*Jacob D. Smith* and *Lee, Blessing & Steed,* for relators.

*W. T. Lovins,* for respondents A. W. McLean, Randolph Sias, Jesse Manns, and J. M. Marcum.

No. 8163:

*W. T. Lovins,* for relators.

*Jacob D. Smith* and *Lee, Blessing & Steed,* for respondents S. S. McClure, Geo. W. Walden, J. E. Harless, and Calloway Linville.

HATCHER, JUDGE:

These are two proceedings in mandamus presenting the several claims to certain ballots (cast at the general election in November, 1934) of five Republican and four Democratic candidates for the Board of Education in Lincoln County. All of the Republican candidates were elected on the face of the returns by majorities ranging from 23 (for Lucas) to 130 (for Walden). A recount resulted in the election of three Republicans and two Democrats. The vote on the recount follows:

| | | |
|---|---|---|
| Geo. W. Walden | (R) | 4203 |
| S. S. McClure | (R) | 4155 |
| Elza B. Adkins | (D) | 4115 |
| F. B. Dyer | (D) | 4110 |
| J. E. Harless | (R) | 4110 |
| W. B. Linkous | (D) | 4109 |
| Homer Hall | (D) | 4106 |
| C. B. Lucas | (R) | 4085 |
| C. Linville | (R) | 4080 |
| S. Adkins | (D) | 4048 |

The three successful Republican candidates join as relators with their two unsuccessful brethren in the first proceeding. The two successful Democratic candidates join as relators with Linkous and Hall, two of their unsuccessful brethren, in the second proceeding. (S. Adkins is not a party.)

The common law has an ancient maxim—*lex neminem cogit ad vana seu inutilia* (the law forces no one to do a vain and fruitless thing). This maxim has been termed one of "common sense" and has been otherwise praised by modern courts. See citations 36 C. J. 1048, note 72(c). The principle it expresses has been invoked and applied by this Court in a line of cases involving the counting of ballots. "Mere personal satisfaction to a candidate of knowing he received a certain number of votes, or that a ballot is countable for him, is, in law a mere abstract right for the vindication of which mandamus does not lie." *Ice* v. *Board,* 64 W. Va. 544, 63 S. E. 331. Accord: *Hall* v. *Staunton,* 55 W. Va. 684, 47 S. E. 265; *Johnson* v. *Board,* 102 W. Va. 703, 705, 136 S. E. 772; *Cantrell* v. *Board,* 107 W. Va. 362, 364-5, 148 S. E. 320; *Hatfield* v. *County,* 113 W. Va. 271, 273-4, 167 S. E. 618. Section 1, article 5 of the County Unit Law, provides that the three candidates for the Board of Education receiving the highest votes shall be elected for four-year terms, and the two candidates receiving the next highest votes shall be elected for two-year terms. Relators George W. Walden and S. S. McClure, in the first petition, and Elza B. Adkins, in the second petition, respectively, received the three highest votes on the recount, which, if undisturbed, would entitle them to four-year terms. Therefore they seek nothing but the vindication of abstract rights, and the several demurrers to the petitions are sustained as to them. Relators J. E. Harless, in the first petition, and F. B. Dyer, in the second petition, respectively, received the next highest votes on the recount, which, if undisturbed, would entitle them to two-year terms. Since a slight change in the number of votes as determined by the recount might result in either Harless or Dyer, or both, being elected to four-year terms, each is substantially interested in the matters averred, and the several demurrers are overruled as to them.

The two proceedings will be considered in the order styled.

1. At Precinct No. 3 in Harts Creek District, the precinct records and the testimony of the precinct officials show that 358 votes were polled, cast and counted. Upon a recount, there were found only 344 ballots in the container from that

precinct with the result that Lucas lost 9 votes, Harless lost 10 votes, and Linville lost 11 votes. It appears without controversy that during the count of the votes at the precinct, a Democratic commissioner to whom the ballots were handed for stringing after they were tallied, was detected placing a crumpled ballot in his pocket. He was not searched, but both before and after the detection, he made trips to a wash room. The evidence demonstrates beyond doubt the abstraction of 14 ballots (358-344) from the vote of this precinct, between the precinct count and the recount. Suspicion points at the commissioner. However, when such tampering is established, its explanation is not essential. The occurrence alone requires that the precinct count be adopted. See generally *State* v. *Banks*, 98 W. Va. 332, 337, 128 S. E. 301.

The returns from Precinct No. 1 in Jefferson District gave to Lucas, Harless and Linville each 175 votes and to each of their opponents 92 votes. Upon a recount there were found a number of mixed ballots, resulting in a loss to Lucas, Harless and Linville of about 20% of their precinct count. The election officials concur that practically all of the ballots were voted openly, and that not more than 10 or 12 mixed ballots were cast. It was proved that a deputy clerk, who had access to the vault where the ballots were stored after being brought to a county seat, had hinted very strongly that changes would be made in the ballots. The deputy freely admitted making the remarks with which he is charged. He explained that they were all made in jest, and testified that he did not tamper with the ballots and knew of no tampering. The weight to be given this evidence was primarily with the canvassing board. *Hatfield* v. *Board*, 98 W. Va. 41, 126 S. E. 708. The policy of a public official jesting about such matters may be questioned; but the canvassers accepted the explanation of the deputy, and we can not say that the acceptance was unjustified. Lucas, Harless and Linville contend that the condition of the ballot container and the markings on the ballots themselves display evidence of tampering. We have inspected both. It may be that different pencils were used in marking a very few of the suspected ballots. The condition of those few, however, does not necessarily show tampering.

Neither is tampering demonstrated by the condition of the container.

The Democratic candidates would explain the difference in the precinct count and the recount by proof (a) that at the former, part of the ballots were called by a Republican commissioner whose vision was defective and who read—if at all—very poorly; and (b) that one of the precinct clerks was intoxicated. The unlettered commissioner and the other election officials were before the canvassing board. It was in better position to weigh the explanation than we are. The explanation is not without plausibility, and if the board accepted it, we can not say the board was wrong. Be that as it may, the election officials merely guessed the number of mixed ballots, and guesses can not prevail against the ballots, when, as here, their integrity has not been destroyed.

Lucas, Linville and Harless complain of six other ballots counted adversely to them. If the entire six were counted in favor of Lucas and Linville and added to the gain restored to them at Precinct No. 3 in Harts Creek District, the result (as to them) determined by the canvassing board would not be affected. As will appear hereinafter Harless does not need the six ballots. Consequently, there is no reason for us to consider them. *Hatfield* v. *Board, supra,* 58 (of 98 W. Va.).

The writ sought by Lucas and Linville is accordingly refused. The writ sought by Harless will be disposed of later.

2. Relators Linkous, Hall and Dyer allege that 18 ballots should have been counted in their favor which were not. Eleven of such ballots had an X in the box to the left of the name of the Honorable Rush D. Holt (Democratic nominee for the United States Senate) and no other markings. The remaining 7 also had an X opposite his name, but, in addition, had an X in the box opposite the name of one or more other candidates. The Republican candidates oppose counting any of the 18 ballots for Linkous, Hall and Dyer, and show that 8 ballots, which contained no other markings than an X to the left of the name of the Honorable Henry D. Hatfield (Republican candidate for the United States Senate), were counted for him alone. Linkous, Hall and Dyer contend that Mr. Holt was the head of the Democratic ticket and that a

vote for him was a vote for the entire Democratic ticket. They rely on the rule that a sole X on a ticket, opposite the candidate for President, indicates an intention to vote the entire ticket. The rule is based on recognition of the fact that many voters consider the candidate for President to be so exclusively the leader and representative of his party that his name on the ticket stands, in effect, for the party itself. We are of opinion that in a Congressional election voters do not ordinarily accord such a position to a candidate for the Senate. While the latter did head the instant ticket, the Democratic candidate for the House of Representatives was also on the ticket. The party leadership of a candidate for the Senate is considered only a slight degree higher—if at all—than that of the candidate for the House. Party representation is shared jointly by both candidates. Therefore a candidate for the Senate can not be taken to represent his party to the extent of a candidate for President.

We are committed to the above rule as to an X opposite the name of a Presidential candidate, but are not willing to extend the rule. It may be that this as well as other rules affecting the voter's intention, heretofore promulgated by this Court, would not be made now if on first impression. We feel, however, that consistency in our rulings will better serve the electorate than the attainment of what might be considered more logical rulings under changed personnel of the Court.

The relief sought by Linkous, Hall and Dyer is accordingly refused.

The adoption of the precinct count at precinct No. 3, Harts Creek District, will increase the total vote of relator Harless to 4120, which is five votes higher than the vote received by Elza B. Adkins, and entitles Harless to one of the three four-year terms. The writ will therefore issue in relation to the said precinct vote as prayed for by Harless.

*Writ issued as to Harless; other writs refused.*