STATE ex rel. THOMAS P. O'BRIEN

v.

ALBERT L. KRESS, et al.

(No. 10866)

Submitted January 9, 1957. Decided January 29, 1957.

476

*G. Alan Garden, W. F. Keefer, C. Lee Spillers, Thomas A. Goodwin, John B. Garden,* for relator.

*Joseph A. Gompers, Dale G. Casto, Vincent V. Chaney, William Callahan,* for respondents.

BROWNING, JUDGE:

Thomas P. O'Brien, candidate for the office of Prosecuting Attorney of Ohio County on the Democratic ticket, instituted this original proceeding in mandamus against the respondents, the members of the Board of Commissioners of Ohio County, sitting as a Board of Canvassers, and George F. Beneke, Republican candidate for the office of Prosecuting Attorney, praying that the Board of Canvassers be commanded to reconvene as such, eliminate certain votes allegedly improperly counted by them from the total vote cast for each candidate, revoke the certificate of results theretofore issued, issue a new certificate showing the corrected results of the election,

and to declare the petitioner elected to the office of Prosecuting Attorney of Ohio County.

The petition, after setting forth the requisite preliminary facts, alleges that: Upon the official canvass, the respondent Beneke lead the petitioner by four votes; petitioner demanded and was accorded a recount; upon the recount, the Board of Canvassers ruled that a ballot which did not contain a cross mark in the straight ticket circle at the head of the party ticket, or a cross mark in the square before the name of either candidate for the office of Prosecuting Attorney, should not be counted for either candidate, and continued under this ruling until the recount had proceeded for seven days and sixty per cent of the recount had been completed; at this point, the tally indicating the petitioner to be leading by approximately thirty-six votes, the Board made a new ruling, to wit, that a mark in the square in front of the brace connecting the names of the presidential and vice-presidential candidates, without cross marks in either the straight ticket circle at the top of the ticket, or before the name of either candidate for the office of Prosecuting Attorney, was tantamount to a cross mark in the straight ticket circle, and should be counted as a vote for the candidate for the office of Prosecuting Attorney of the same party, in complete disregard of Code, 3-5-4, as amended by Acts of the Legislature, Regular Session, 1955; as a result of such improper counting, the respondent Beneke was declared to have received a majority of 163 votes for the office of Prosecuting Attorney, and a certificate so certifying was then issued. The petition then alleges the respective number of votes illegally or improperly counted for each candidate, and that the elimination thereof would result in petitioner's election to the office of Prosecuting Attorney, and concluded with the prayer heretofore mentioned.

The respondent Board of Canvassers, and respondent Beneke, individually, demurred to the petition on the ground that it shows on its face the votes objected to were properly counted and respondent correctly declared to

have received a majority of the votes cast at the election of November 6, 1956.

The respondent Beneke answered, and asserts that Code, 3-5-4, as amended, is inapplicable to the instant case in view of the provisions of Code, 3-5-19, as amended, and the pertinent decisions of this Court. The answer further states that, of the total number of votes allegedly improperly counted, 267 bore a single cross mark which was placed in the square before the names of the presidential and vice-presidential candidates; and that a tabulation of these ballots would result in a majority for the respondent of 12 votes. 709 other ballots which were counted as votes for either respondent or petitioner, in addition to a cross mark in the square before the presidential and vice-presidential candidates, bore other markings for both Democratic and Republican candidates for office, but no cross mark before the name of either petitioner or respondent. The petitioner then demurred to the answer on the ground that the facts stated therein do not constitute a valid defense.

The pertinent portions of the statutes involved are:

Code, 3-5-4, as amended: "* * * In elections for presidential electors, the names of candidates for electors of any political party or group of petitioners, shall not be placed on the ballot * * *. In place of their names, there shall be printed first on the ballots the names of the candidates for president and vice-president, respectively, of each party or group of petitioners * * *. Before the names of such candidates for president and vice-president of each party, or group, a single square shall be printed, in front of a brace, in which the voter shall place the cross mark for the candidate of his choice for such offices. A vote for any of such candidates shall be a vote for the electors of the party by which such candidates were named, * * *."

Code, 3-5-19, as amended: "On receipt of the ballot the voter * * * shall prepare the ballot, * * * observing the following rules:

"(a) If the voter desires to vote a straight ticket, * * * he shall either:

"(1) Make a cross mark in the circular space below the device and above the name of the party at the head of the ticket; or

"(2) Make a cross mark on the left and opposite the name of each and every candidate of such party in the blank space provided therefor; or

"(3) Mark out, by lines, all the tickets on the ballot, other than the ticket he desires to vote.

"(b) If the voter desires to vote a mixed ticket, * * * he shall either:

"(1) Omit making a cross in the circular space above the name of the party, and make a cross mark in the blank space before the name of each candidate for whom he desires to vote on whatever ticket the name may be; or

"(2) Make a cross mark in the circular space above the name of the party for some of whose candidates he desires to vote, and then make a cross mark before the name of any candidate of any other party for whom he may desire to vote; in which case the cross mark in the circular space above the name of the party will cast his vote for every candidate on the ticket of such party except for offices for which candidates are marked on other party tickets, and the cross marks before the name of such candidates will cast his vote for them; or

"* * *.

"If, in marking either a straight or mixed ticket, as above defined, a cross mark is made in the circular space above the name of a party at the head of the ticket, and also one or more cross marks made before the name or names of candidates on the same ticket for offices for which candidates on other party tickets are not individually marked, such marks before the name of candidates on the ticket so marked shall be treated as surplusage and ignored.

"* * *.

"No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice."

Prior to the Amendment of 1955, Section 4, Article 5, Chapter 3, read in part as follows: "* * * In elections for presidential electors the names of the candidates for president and vice president of the United States shall be placed on the ticket immediately following the name of the party, and preceding the names of the presidential electors, and shall be certified to the clerks of the circuit courts by the chairman and secretary of the State executive committee of the political party making the nomination.* * *"

This Court held in *Hatfield* v. *Board of Canvassers*, 98 W. Va. 41, 126 S. E. 708, decided in 1925, that where a ballot was marked by an X to the left of Calvin Coolidge, with no other marks on the Republican ticket except erasures through the names of the candidate for house of delegates and candidate for justice of the peace, and an X was placed in the square before the Democratic candidate for house of delegates and before the candidate for justice of the peace on that ticket, "The intention was to vote a straight republican ticket except for those candidates struck off, * * *." In the opinion, the Court said: "Section 34 of Chapter 3 of the Code lays down certain rules which the voter should use in marking his ballot. They are not mandatory rules, and there are no positive terms inhibiting the counting of ballots which are not marked in accordance with them. On the contrary, it is provided that no technical error which does not make it impossible to determine the voter's intention shall be invoked to reject the ballot. The intention is the prime consideration if it can be ascertained by inspection of the ballot.* * *" However, the Court held that where the only marks on the ballot were an X to the right of the presidential candidate Calvin Coolidge, an X in the square before one presidential elector and the candidates for governor and state senate

on the same ticket, the voter intended to vote only for those individuals.

The rule in the *Hatfield* case was followed in *State ex rel. Lambert* v. *Board of Canvassers,* 106 W. Va. 544, 146 S. E. 378, the Court stating in the opinion that: "* * * an X before the name of the presidential nominee indicates a straight ticket, providing no other candidates are voted for in the same ticket to negative such intent. Such voting is without the statute, and the Court looks to the intent of the voter in so far as that intent can be ascertained." It was also held in that case that a vote for one or more of the electors of a party did not constitute a vote for any person on the ballot other than the electors before whose name an X was placed.

The only syllabus point in *Chapman* v. *County Court,* 113 W. Va. 366, 168 S. E. 141, states: "Election ballots prepared in conformity with Code 1931, 3-5-19, should be counted as therein directed; and ballots otherwise marked should be counted according to the intention of the voter if possible of ascertainment." A ballot on which an X was placed to the left of the name of the Democratic candidate for President, and an X in the square in front of four candidates on the Republican county and district ticket was held to be a straight Democratic vote, with the exception of the Republicans individually "X-ed".

*McKown* v. *Board of Canvassers,* 113 W. Va. 498, 168 S. E. 793, was decided at the same term of Court as the *Chapman* case, and the second syllabus point thereof holds that the placing of an X before the name of each of the presidential electors on a party ticket does not constitute a vote for all party candidates, but is a vote for the electors only.

In *Lucas, et al.* v. *Board of Canvassers,* 116 W. Va. 427, 181 S. E. 77, this Court held that in a general election in which there were no candidates for President of the United States, and the tickets were headed by candidates for the United States Senate, a vote for such

candidate was not a vote for all of the candidates on that ticket. In other words, the Court refused to extend the rule of the *Hatfield* and subsequent cases in that situation. Judge Hatcher said in the opinion: "* * * The rule is based on recognition of the fact that many voters consider the candidate for President to be so exclusively the leader and representative of his party that his name on the ticket stands, in effect, for the party itself. We are of opinion that in a Congressional election voters do not ordinarily accord such a position to a candidate for the Senate. While the latter did head the instant ticket, the Democratic candidate for the House of Representatives was also on the ticket. The party leadership of a candidate for the Senate is considered only a slight degree higher—if at all—than that of the candidate for the House. Party representation is shared jointly by both candidates. Therefore a candidate for the Senate can not be taken to represent his party to the extent of a candidate for President." This further comment was made in the opinion upon the rule that an X in front of a presidential candidate, with no other markings on the ballot, constitutes a vote for all of the other candidates on that ticket: "* * * It may be that this as well as other rules affecting the voter's intention, heretofore promulgated by this Court, would not be made now if on first impression. We feel, however, that consistency in our rulings will better serve the electorate than the attainment of what might be considered more logical rulings under changed personnel of the Court."

The only other case in point decided by this Court subsequent to the *Lucas* case, and prior to the Amendment to Code, 3-5-4, at the Regular Session of the Legislature of 1955, was *State ex rel. Bumgardner* v. *Mills, et al.*, 132 W. Va. 580, 53 S. E. 2d. 416, in which the rule in the *Hatfield* case was again followed.

The rule established by this Court as to the significance of an X before the name of a candidate for President of the United States has been superseded by the amendment of Section 4 by the Acts of the Legislature, 1955. Therein it is specifically provided that the names

of the candidates for President and Vice-president of each party shall be printed in front of a brace; that a single square shall be placed before their names; and that: "* * * A vote for any of such candidates shall be a vote for the electors of the party by which such candidates were named, and whose names have been filed with the secretary of state." The Amendment, known as Chapter 63, Acts of the Legislature, 1955, is entitled: "An Act to amend and reenact section 4, article 5, chapter 3 of the code of West Virginia, one thousand nine hundred thirty-one, as amended, relating to the election of presidential electors." The title of Article 5 is in these words: "Conducting Election; Ascertaining and Certifying The Result." The title of Chapter 3 is: "Elections." It is not material that the change in the manner of selecting electors is found under Section 4 rather than Section 19 of Article 5. *State ex rel. White Oak Fuel* v. *Davis,* 74 W. Va. 261, 82 S. E. 207; *State ex rel. Trust Co.* v. *Melton,* 62 W. Va. 253, 57 S. E. 729.

Section 4, as amended, can mean only what it says in clear and unambiguous words that cannot be misunderstood. The validity of the Act is not questioned in this proceeding. Therefore, when a voter has made a cross mark upon his ballot in the manner provided in the Act, the effect of such action shall be that which is expressly provided therein and no other. The intent of a voter who so marks his ballot is no longer a proper subject of inquiry by this Court. By express provision of the Amendment, the placing of an X in the square opposite the names of Dwight D. Eisenhower and Richard M. Nixon, nominees for President and Vice-president, respectively, was a vote only for the eight Republican electors who had been selected by the Republican party, and whose names were on file in the office of the Secretary of State. The same is true as to the placing of an X in the square opposite the names of Adlai E. Stevenson and Estes Kefauver, the Democratic nominees for President and Vice-president. The Amendment places the casting of such a vote squarely within the rule of the *McKown* case that an X before the name of each

484

of the presidential electors on a party ticket does not constitute a straight ballot, but is a vote for the electors only. A voter is not required to vote for every office to be filled at an election. *Brannon* v. *Perkey*, 127 W. Va. 103, 31 S. E. 2d. 898. Cooley's Constitutional Limitations, 8th Ed., page 1388.

Thus the 267 ballots on which a single X was marked, either in front of the Republican nominees for President and Vice-president, or the Democratic nominees for those offices, constituted a vote only for the electors of the parties which those candidates represented. There were Xs upon the other 709 ballots for individual candidates, other than the presidential candidates, but on none of the 976 ballots was there an X in the square before the name of either the relator O'Brien or the respondent Beneke. Therefore, none of these ballots should have been counted for either candidate for the office of Prosecuting Attorney of Ohio County. By eliminating all of those ballots, it is apparent that O'Brien received a majority of 49 votes for the office of Prosecuting Attorney of Ohio County in the November 6, 1956, General Election. A writ will issue directing the Board of Commissioners of Ohio County to reconvene as a Board of Canvassers and issue a new certificate of the result of such election, in so far as it relates to the election of a Prosecuting Attorney for the County of. Ohio, in conformity with the views expressed in this opinion.

*Writ awarded.*